UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMORY D. CHRISTIAN,<br><br>    Plaintiff,<br><br>    v.<br><br>RANCHO GRANDE MANUFACTURED HOME COMMUNITY, et al.,<br><br>    Defendants. | Case No.  21-cv-07040-VC<br><br>**ORDER GRANTING MOTIONS TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 103, 104, 107 |

Despite nearly one hundred additional pages, the Third Amended Complaint is deficient for the same reasons as the Second Amended Complaint. *See* Dkt. No. 97.[1]

Christian repeatedly asserts race discrimination and conspiracy, but she does not allege facts that plausibly support those claims. For example, Christian alleges that three of the defendants refused to pay to remove vegetation on her property "because [she] is African-American and they had a pattern and practice of refusing to provide any housing and maintenance service[s] and privileges to [her], because of her race." Dkt. No. 98 at 20. That is a conclusion, not an allegation of fact. The complaint goes on to say that the defendants eventually performed the requested work "as a result of this lawsuit being filed." *Id.* While that is a fact, it does not help her plausibly allege race discrimination; it suggests only that the defendants wanted to make a costly lawsuit go away.

Christian does provide a few new facts. She alleges that her real estate agent, who is white, was the one who picked up her residency application. *Id.* at 49. That meant that the

---

[1] This order assumes the reader is familiar with the case.

Hamernicks only discovered Christian's race when she arrived to sign her lease, at which point "B. Hamernick seemed very, unpleasantly surprised to learn that [she] was Black." *Id.* Christian alleges that the Hamernicks' poor treatment of her began right away: They allegedly did not promptly provide her with a copy of her signed lease, did not provide her with a remote control for the community's gate (such that she had to use the keypad), and did not add her to the community's telephone directory (but did add everyone else, including later-arriving residents). *Id.* at 50–51. Christian alleges that the Hamernicks declined to fix a leak from a water spigot on her property for years, though she notes that this resulted in higher water bills for Rancho Grande and all its residents. *Id.* at 55. She explains that this is evidence of their determination to deprive her of maintenance services "no matter who was made to suffer." *Id.*

Christian claims that Burt Hamernick "conducted an investigation as to whether [she] was a good neighbor," meaning that he asked another resident about her. *Id.* at 55. Christian asserts they would have made no such inquiry for a non-Black resident. *Id.* at 56.

She alleges that her white neighbors "confirmed that they had not received the level of indifference" that she experienced, and that five specific white residents "approached [her] to express their shock and disheartenment about the unequal treatment and racial discrimination" that she had suffered. *Id.* at 58. She also says one neighbor told one of her attorneys that "she attributed . . . B. Hamernick's actions to his being racist, due to [Christian] being the only person of color in the vicinity." *Id.* at 78. In a community of 308, Christian was apparently one of only two Black residents. *Id.* at 14.

The conclusions of other residents that Christian was being discriminated against are of little weight without the reasons for their conclusions, though it is helpful to Christian that her neighbors believed the treatment of her was unusually poor. In some cases, racial animus may be an appropriate inference from particularly egregious treatment of one of only a few minority residents. Christian cites *Hicks v. Makaha Valley Plantation Homeowners Association* to suggest that such an inference is warranted here. No. 14-00254, 2015 WL 4041531 (D. Haw. June 30, 2015). But the plaintiffs in that case alleged a range of independent acts taken against them by

management, including several instances of security guards approaching them based on their appearance. *See id.* at *10. Those facts support an inference of racial discrimination far more readily than the facts alleged here, which are essentially a handful of instances of subpar responsiveness by management and then one big dispute over a property line.

Christian's other allegations also fail to make her claims plausible. She alleges that Burt Hamernick sent her an email recounting a previous encounter between them and recalling that Christian had identified her race and gender and said something about "BLM," meaning Black Lives Matter. *Id.* at 75. Christian calls this a false assertion meant to "be read, at later times, by his higher ups and others to alert them that [she] was Black" and a Black Lives Matter "sympathizer" who should be treated poorly. *Id.* at 76–77. This allegation does not make sense. And despite Christian's assertion, it is not "as if B. Hamernick shouted, 'You see this female African-American making all these demands . . . Well, ignore her and her demands because she likes BLM!'" *Id.* at 77. If *that* were what the defendant had said or suggested, it could support an inference of race discrimination. But Christian does not actually claim Hamernick said that, and she cannot plead her claims by putting words in a defendant's mouth. The same goes for Christian's allegation that Roberts, her white neighbor, said that her "rights were being slowly eroded." *Id.* at 84. Christian editorializes that Roberts meant her rights as a white person, but that is neither what she allegedly said nor a plausible inference in the context of a dispute regarding the boundary between their homes—that is, a dispute over Roberts' (and Christian's) *property* rights. *Id.*

To support her conspiracy claim, Christian alleges meetings between the various defendants. *See, e.g.*, *id.* at 32. But opportunities to conspire are not sufficient to state a claim for conspiracy, because the fact that two people met outside the presence of the plaintiff does not make a conspiracy plausible. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The allegations do not provide any more than that, other than that the defendants each failed to do what the plaintiff wanted them to do or otherwise treated her poorly. For instance, Christian alleges that Hotchkiss, one of the inspectors, spent "more than an hour" with Burt Hamernick

and Roberts, and that her home security camera recorded him discussing the property line dispute between Christian and Roberts. Dkt. No. 98 at 32. But the only content of the discussion that Christian relates is that Hotchkiss suggested that Hamernick evict her, and Hamernick responded that he wished he could. *Id.* at 34. That fact implies frustration or even personal animus, but it does not suggest a conspiracy against Christian on account of her race. Christian alleges even less against the second state inspector, Stephenson, who was dispatched at her request and then attempted to implement a "compromise" over the boundary dispute. *Id.* at 41–48.

The federal claims are therefore dismissed: The first cause of action fails because there are no plausible allegations of a conspiracy, and the second through fifth causes of action fail because there are not plausible allegations that the defendants acted on the basis of Christian's race or that the state inspectors' actions were anything more than negligent (which does not violate the Due Process Clause, as explained in the previous dismissal order). The Court declines to exercise supplemental jurisdiction over the remaining state law claims (the sixth through twenty-first causes of action). 28 U.S.C. § 1367(c)(3); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001).

Christian seeks leave to amend in each of her opposition briefs. But she does not say she can cure any of the deficiencies pointed out by the Court's previous dismissal or the defendants' motions to dismiss. Indeed, Christian does not propose to allege any new facts. Rather, she proposes to add new claims based on the same facts: Fair Housing Act claims; section 1983 claims against the non-state defendants; and new state law claims against the Hamernicks. Dkt. No. 115 at 9 n.5, 25; Dkt. No. 117 at 23, 26; Dkt. No. 116 at 27. The new federal claims would require the same facts showing of race discrimination that Christian has repeatedly failed to make. The one exception would be the Fair Housing Act claim under 42 U.S.C. § 3604(f), which prohibits housing discrimination against persons with disabilities. Christian does not explain why such a claim would be appropriate here. Her complaint alleges that the defendants' conduct caused her physical and mental injuries, and that she is on disability as a result. Dkt. No. 98 at

94. But she does not allege that the defendants acted because of any handicap of hers, which is what the Fair Housing Act claim would require. Amendment would therefore be futile as to the federal claims, and the Court would decline to exercise supplemental jurisdiction over the proposed state claims.

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Lund v. Cowan*, 5 F.4th 964, 973 (9th Cir. 2021). Courts have particularly broad discretion to deny leave to amend where a plaintiff has previously amended the complaint. *In re Read-Rite Corp.*, 335 F.3d 843, 845 (9th Cir. 2003). While the standard for denying leave to amend has been phrased as requiring that the pleading "could not possibly be cured by the allegation of other facts," *United States v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001), it does not require that courts dream up facts when the plaintiff "points to no additional facts that [they] might allege" to cure a persistent deficiency. *Metzler Investment GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008). Dismissal without leave to amend can be appropriate even when a prior dismissal "did not provide . . . guidance as to the basis for the dismissals." *Id.* Here, the order dismissing the prior complaint gave Christian specific guidance about the deficiencies of her allegations. Dkt. No. 97. And the latest complaint is long and highly detailed, indicating that all relevant facts are already included. There is no reason to think that Christian would be able to allege the necessary facts in a fourth amended complaint, and dismissal is therefore without leave to amend (but without prejudice to pursuing the state law claims in state court).

**IT IS SO ORDERED.**

Dated: November 22, 2022

VINCE CHHABRIA
United States District Judge